W. E. Stivers and T. Opal Stivers v. Commissioner. H. L. Stivers and Mabel Stivers v. Commissioner.
Stivers v. Commissioner
Docket Nos. 91420, 91492.
United States Tax Court
T.C. Memo 1964-165; 1964 Tax Ct. Memo LEXIS 171; 23 T.C.M. (CCH) 965; T.C.M. (RIA) 64165; June 16, 1964
*171 Petitioners distributed bakery products made by the student bakery of Berea College. However, their receipts did not match the proceeds from bread distributed since some of it was exchanged for stale bread. The petitioners did not pay the college for the exchanged bread and they withheld other receipts from bakery product sales, thereby creating a growing indebtedness on the books of the college. Although on the cash basis, the petitioners deducted the net losses resulting from the exchange of fresh bread for stale on their Federal income tax returns. Held: Under the cash method of accounting the loss created by the exchange of fresh bread for stale is not allowable until it is actually paid. Petitioners have failed to carry their burden of proof that these losses were allowable in the years here involved. Charles Speed Gray, for the petitioners. Howard K. Schwartz, for the respondent. HOYT
Memorandum Opinion HOYT, Judge: The respondent determined deficiencies in the petitioners' income tax as follows: Docket No. 91420
1956
$2,313.57
1957
2,045.63
1958
4,889.05
Docket No. 91492
1956
4,297.74
1957
2,998.98
1958
1,489.81
Respondent conceded on brief all issues except whether certain "stale loss" deductions claimed by the petitioners for the years in question are allowable. H. L. and Mabel Stivers, petitioners in Docket No. 91492, were married during the years before the Court, but filed separate returns for the taxable years 1956 and 1958. A joint return was filed for the taxable year 1957. W. E. and Opal Stivers, petitioners in Docket No. 91420, were married during the years before the Court and filed joint returns for the taxable years 1956 and 1957. Separate returns were filed for the taxable year 1958. All of the returns were filed with the district director of internal revenue at Louisville, Kentucky. Berea College is a small liberal arts college in Berea, Kentucky, which charges no tuition and minimum student fees. *173 The students help pay their expenses through a student labor program which requires all students to work at least 10 hours a week in student industries operated by the college. There are a number of such activities each of which is operated as a separate department of the college with a superintendent in charge of each department. The products and services of these departments are offered for sale to the public. The only products of the college which are sold through retail outlets, other than those operated by the college, are bakery and dairy products. H. L. and W. E. Stivers are brothers and have carried on the distribution of these products for many years. This distributorship was begun by their father and was continued by them as a family business. On June 9, 1954, the Stivers brothers entered into two contracts with Berea College. One was for the distribution of dairy products and the other was for the distribution of bakery products. The latter contract reads as follows: THIS CONTRACT this day made and entered into by and between Berea College, H. L. Stivers, and W. E. Stivers, all of Berea, Madison County, Kentucky, each with the other, WITNESSETH: That H. L. Stivers *174 is the owner of the following described trucks: One 1951 1-ton International Truck Two 1947 1-ton International Trucks One 1950 1-ton Dodge Truck One 1947 1-ton Chevrolet Truck One 1948 1-ton G.M.C. Truck, used as a spare. W. E. Stivers is the owner of the following described trucks: One 1950 International Metro Panel 3/4-ton truck One 1949 Chevrolet Panel 3/4-ton truck One 1952 International Metro Panel 3/4-ton truck One 1950 Dodge Panel 3/4-ton truck One 1949 Dodge Route Van 3/4-ton truck used as an extra. all of which are now being operated for the delivery, distribution and sale of bakery products of Berea College. The said H. L. Stivers has made, constituted and appointed, and does hereby make, constitute and appoint the said W. E. Stivers, his true and lawful attorney-in-fact, for him and in his name, place and stead, to operate and have operated the aforesaid trucks owned by H. L. Stivers, carry on the delivery, distribution and sale of bakery products of Berea College, on his behalf under the terms of this contract, lease said trucks to Berea College and carry on and conduct every phase and activity for the delivery, distribution and sale of bakery products *175 for Berea College; collect the receipts going to him therefor, and receipt for the same, and carry out all the terms and conditions contained in this contract. Said W. E. Stivers in consideration of One Dollar ($1.00) and other valuable considerations, hereby rents and leases all of the aforesaid trucks owned by W. E. Stivers and H. L. Stivers to Berea College beginning at date hereof and continuing until this contract is terminated. This agreement may be terminated by either W. E. Stivers or Berea College, by one of them giving the other a six months written notice of his or its intentions to terminate the same; and shall be deemed to be terminated six months from date of delivery or service of such written notice. Failure to give such written notice shall be regarded by the injured party as a just cause against the other, from any and all damages resulting therefrom. W. E. Stivers is to operate said trucks for the delivery, distribution and sale of bakery products of Berea College, and any other products of Berea College that may hereafter be agreed upon. He shall not transport any merchandise or products except such as is owned by Berea College. He is to keep all of said trucks *176 in good condition, at his expense, and replace said trucks whenever it is necessary to do so at his expense. If any additional trucks are needed in said business of selling, transporting, delivering and distributing said bakery products he is to purchase such trucks as are necessary to properly carry on a profitable business, and all new trucks purchased by him, either as replacements or additional trucks, shall be deemed to be leased to Berea College under this agreement, and shall come within the terms and conditions of this contract. All trucks purchased by W. E. Stivers shall be upon the written approval of Berea College as to size and appearance. Each truck shall be kept insured at all times for $50,000.00 bodily injury to one person, $100,000.00 bodily injury to two or more persons and $5,000.00 property damage, in any one accident. W. E. Stivers and Berea College shall each pay one-half of the premiums based upon a $25, - $50,000.00, $5,000.00 policy, and Berea College shall pay the additional premiums. Workmen's Compensation Insurance shall be carried at all times and W. E. Stivers and Berea College shall each pay one-half of the premiums. All trucks are to be kept clean *177 and attractively painted at the expense of W. E. Stivers. The color of the trucks and all signs and advertising thereon shall be approved by Berea College. W. E. Stivers is to operate the following delivery routes: 1. Lexington No. 1, consisting of the South side of Lexington and Georgetown. 2. Lexington No. 2, to Winchester and Mt. Sterling. 3. Lexington No. 4, Lexington only. 4. Lexington No. 6, Nicholasville, Wilmore, Harrodsburg, Lawrenceburg and Versailles. 5. Richmond. 6. Berea. 7. Manchester. 8. Danville. 9. London. These routes are mapped, said map being in the possession of Berea College and same is made a part of this contract. W. E. Stivers is to operate such additional routes as may hereafter be designated by Berea College. All drivers, truck operators and delivery men shall be well paid, and have ability as salesmen, shall be courteous, and neat and clean at all times during their working hours. W. E. Stivers agrees to pay all wages, salaries, taxes, license fees, office expenses, upkeep and maintenance, and all other expenses of said sales and distribution business. W. E. Stivers is to give his personal attention to said business, and he is to *178 devote his time to properly conducting and carrying it on, and for its profit and advantage. W. E. Stivers nor H. L. Stivers shall not mortgage, pledge, or place any lien of any kind, upon any of his trucks, business fixtures or equipment, nor shall he permit the same to be done, except that the same may be mortgaged, pledged, or placed in lien to Berea College. In the event W. E. Stivers, H. L. Stivers, or either of them becomes insolvent, makes as assignment for the benefit of creditors, becomes a bankrupt, or fails or refuses to conduct and carry on said business or breaches any of the conditions of this contract, Berea College may terminate this contract immediately and without notice, or it may make application for the appointment of a receiver. All funds collected by W. E. Stivers, his agents and servants, shall be delivered to the Treasurer's Office of Berea College daily. When credit sales are made to customers approved for credit sales by the Credit Department of the Treasurer's Office of Berea College, the sales account shall be delivered to the Treasurer's Office and shall be deemed between the parties hereto as a cash sale. In consideration therefor and as full *179 compensation to W. E. Stivers, Berea College agrees to pay him 23 1/2% of the net sales of bakery products on the afore-said Danville, Manchester, and London routes; and is to pay him $50.00 per week, transport truck expense, and a commission of 21 1/2% of the net sales of bakery products on all the other routes. It is agreed that one per cent (1%) of these net sales is to be set aside and held by Berea College as a depreciation reserve fund to be used for the purchase of new trucks, or such other purposes as may be hereafter agreed upon. This may be discontinued upon election of Berea College at any time. Failure or refusal of W. E. Stivers to comply with the terms and conditions of this agreement shall result in a forfeiture of the reserve fund then on hand, and the same shall become the property of Berea College. W. E. Stivers is operating other trucks for the sale of dairy and creamery products of Berea College. Said W. E. Stivers is to keep separate accounts of these two businesses. W. E. Stivers is to have his accountings made and conducted under a certified public accountant supervisory service, and statements of the accounting shall be made at least quarterly and a copy *180 thereof furnished to Berea College, W. E. Stivers, and H. L. Stivers. W. E. Stivers and Berea College are each to pay one-half of said accounting services. W. E. Stivers agrees to execute a bond with corporate surety, or surety to be approved by Berea College in the amount of $10,000.00 for the full and faithful performance of this agreement. In the event W. E. Stivers should become disabled in any manner so that he can not carry out and perform this contract with Berea College, then H. L. Stivers agrees to carry out and perform the same. In the event of death of either H. L. Stivers or W. E. Stivers, it is agreed that the survivor of them shall carry out and perform the terms and conditions of this contract and shall have the right and privilege of using the trucks and equipment of the one who has died to do so. This contract shall not be sold, leased, or sublet by W. E. Stivers. It is agreed to by H. L. Stivers and W. E. Stivers that an the expiration or termination of this contract, Berea College shall have the right and privilege of purchasing such of the trucks and equipment owned by W. E. Stivers and H. L. Stivers, or either of them, as it may desire. The price to be *181 paid therefor to be fixed by one person selected by H. L. Stivers and W. E. Stivers and one person selected by Berea College, and if these two cannot agree upon a price or prices therefor, the two selected persons shall designate a third person and the price fixed by any two of them shall be the price to be paid. H. L. Stivers and W. E. Stivers, each agree to execute a will naming an executor therein and authorizing said executor to carry on the aforesaid business under the terms of this contract. In witness whereof the parties hereto have each signed their names to quadruplicates hereof, each to be considered an original this 9 day of June, 1954. /s/ W. E. Stivers /s/ H. L. Stivers BEREA COLLEGE
By: L. D. Bibbee WITNESS: Maude Ledford Pursuant to the terms of this contract, bakery products were picked up each day by the distribution trucks. At this time a debit would be made to the account carried by Berea College as a receivable from the Stivers brothers for the wholesale price of goods placed on the trucks. Credits to this account receivable were made for all cash receipts and approved credit sales remitted to Berea College by the Stivers brothers. The latter were *182 treated as cash sales pursuant to the contract. The petitioners were paid weekly commissions by checks issued by the college according to the commission rates established in the contracts. On Schedule C of the Federal income tax returns for the years in question the Stivers brothers took the following deductions as "stale losses": H. L. Stivers
Taxable
Stale Loss
Year
Deduction
1956
$14,031.91
1957
13,028.37
1958
11,334.14
W. E. Stivers
1956
12,267.56
1957
14,293.20
1958
14,437.24
The Stivers' drivers or route men would be consigned a certain amount of bread each day. They would be forced to pick up some stale bread from the various retailers and replace it free of charge with fresh bread. This stale bread was turned in to the Stivers' warehouse which had a stale outlet that sold the bread at half price. The gross amount of credit given the route men on the books of the petitioners for stale bread was reduced by the revenue received from the sale of stale bread. This is the manner in which the petitioners arrived at a net "stale loss" figure. The Stivers brothers did not abide by all of the conditions of their contract with Berea College. They *183 did not turn over the funds daily as required; they did not turn over the monthly reports; [1] and they were unable to execute a surety bond. This nondeposit of daily receipts was done with the full knowledge and acquiescence of the college. Petitioners used these withheld funds chiefly to pay the operating expenses of the distribution business and to cover the losses in question. Also the college occasionally advanced funds to the Stivers brothers to help them buy rolling stock. These advances were evidenced by notes secured by chattel mortgages. The record does not disclose the amounts of these advances in the years before us. Each of the Stivers brothers maintained books and records of his business as a wholesale distributor. They employed a bookkeeper who kept the records and prepared their tax returns on the cash basis of accounting. Their income was determined from commission statements received from Berea College. All expenses were paid in cash, and there was no carry-over at the end of the year and no accrued expenses. It is not clear from *184 the evidence exactly when and how much the Stivers brothers paid Berea College. It is clear, however, that petitioners withheld some of the receipts from the sale of bread. The withholding was consistent and built up the Stivers indebtedness to Berea over the years in question as follows: Indebtedness
Indebtedness
of W. E.
of H. L.
Date
Stivers
Stivers
Dec. 31, 1955
$ 9,260.94
$13,531.70
Dec. 31, 1956
35,957.82
24,240.95
Dec. 31, 1957
56,605.88
54,454.94
Dec. 31, 1958
92,136.60
84,171.28 Since there were no receipts for the bread that was exchanged for stale bread it appears that the total indebtedness was at least in part due to the so-called "stale losses". However, these did not exceed the amounts withheld and so they were never actually paid by petitioners. The policy of extending credit to the Stivers brothers was established in 1942 or 1943. The substantial increase in the debit balances of these accounts from 1955 through 1958 was due to a combination of circumstances which compelled the Stivers brothers to withhold cash receipts. They were encountering increased competition from privately operated bakeries, and their sale losses were *185 quite high. Also, they were not receiving adequate commissions, and this situation was not rectified until a new contract was executed on November 14, 1960. There was some testimony by the Stivers' bookkeeper to the effect that at the end of each week a check was issued to the route men by the Stivers to cover the net state losses so that the route men could make an accounting. However, it was not shown what the route men did with the checks, and it was later brought out that this testimony was based on assumption and not personal knowledge. In all events it is clear that the total proceeds from sales remitted by the Stivers and by the route men to the college did not cover all of the sales and the withheld amounts far exceeded the claimed losses from stale bread exchanges. It is thus readily apparent from the evidence presented that the losses resulting from state bread exchanges were covered by the credit extended to petitioners by the college, not by any payments made by them in the tax years in question. They withheld more than sufficient receipts to pay all of their stale losses and thus these losses were, in effect, paid with Berea College's money, not by petitioners. *186 Included in the December 31, 1958, figures of petitioners' indebtedness to Berea College are two notes - one by W. E. Stivers for $64,000 and one by H. L. Stivers for $73,000. They were executed on September 10, 1958, and represented substantially the debit balances in the Stivers' accounts with the college on that date. Although claim was made during trial that petitioners disputed that they owed Berea the amounts claimed and the college should bear the burden of the stale losses, the execution of these notes toward the end of the last of the three tax years here involved indicates that as of that time petitioners recognized their indebtedness in those amounts. At the end of that year, the total stale losses of W. E. Stivers claimed for the 3-year period were less than $41,000, and H. L. Stivers' losses were less than $39,000. At that time they owed Berea College $92,000 and $84,000, respectively. Since the petitioners are on the cash basis of accounting, any loss deduction is allowable only in the year in which it is actually paid. Section 1.461-1(a)(1), Income Tax Regs.; Helvering v. Price, 309 U.S. 409 (1940), affirming a Memorandum Opinion *187 of this court; Vander Poel, Francis & Co., 8 T.C. 407 (1947). Based on all the facts and circumstances disclosed by the record here we find that the petitioners have not sustained their burden of proving that they paid for the "stale loses" during any of the years 1956 through 1958. In the absence of payment to Berea College, the "stale loss" deductions are not allowable. The respondent's determination that such losses were unallowable must be sustained. Pursuant to stipulation of the parties, W. E. Stivers is entitled to two dependency exemptions for the year 1958, instead of the one claimed for that year. Decisions will be entered under Rule 50. Footnotes
1. The testimony refers to monthly reports whereas the contract requires quarterly accountings. This variance is unexplained.↩